No. 15-1858

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

**CORNWELL ENTERTAINMENT, INC., f/k/a CORNWELL
ENTERPRISES, INC., f/k/a CEI ENTERPRISES, INC.;
PATRICIA D. CORNWELL; STACI GRUBER, PH.D.**
Plaintiffs-Appellants,

v.

**ANCHIN, BLOCK & ANCHIN, LLP; EVAN SNAPPER**
Defendants-Appellees

On Appeal from a Final Judgment of the
United States District Court for the District of Massachusetts
Case No. 09-11708-GAO
The Hon. George A. O'Toole, Jr., U.S.D.J.

**REPLY BRIEF OF
PLAINTIFFS-APPELLANTS**

Joan A. Lukey (1st Cir. Bar No. 14225)
Justin J. Wolosz (1st Cir. Bar No. 70575)
Kevin C. Quigley (1st Cir. Bar No. 1172676)
CHOATE HALL & STEWART LLP
2 International Place
Boston, MA  02110
Tel:  (617) 248-5000
Fax:  (617) 248-4000

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

I.    DEFENDANTS' FACTUAL ASSERTIONS IGNORE PLAINTIFFS'
CONTRARY EVIDENCE ...........................................................................1

      A.    Defendants Initiated the DOJ Investigation by Falsely Alleging
that Cornwell "Directed" the Felonious Conduit Scheme ...................2

            1.    Cornwell Did Not Direct Snapper to Reimburse
Himself for the Gilmore Contributions......................................3

            2.    Cornwell Did Not Direct Snapper to Bundle and
Reimburse Contributions for the Hillary Clinton
Benefit Concert. ........................................................................4

            3.    That the DOJ Never Charged Cornwell With a Crime
Is Not Evidence That Defendants Did Not Accuse
Her of Committing a Crime. .......................................................7

      B.    The District Court Did Not Foreshadow at the Pre-Trial Stage
Its Post-Trial FRCP 50(b) Motion Ruling Relating to the DOJ
Investigation .........................................................................................8

II.    DEFENDANTS' FALSE ACCUSATIONS TO THE DEPARTMENT
OF JUSTICE ARE ACTIONABLE...............................................................9

      A.    Defendants Waived Any Affirmative Defense of Qualified
Privilege................................................................................................9

      B.    The Evidence, Properly Viewed in the Light Most Favorable to
the Verdict, Does Not Provide the Safe Harbor Defendants
Seek .....................................................................................................11

      C.    Defendants Should Not Have Been Permitted Simultaneously to
Rely on an Advice of Counsel Defense and Assert Attorney-
Client Privilege....................................................................................14

III.    THE LOWER COURT'S NUMEROUS PRE-FRCP 50(B) RULINGS
REGARDING THE STATUTE OF LIMITATIONS WERE CORRECT ...14

A. The Continuous Representation Doctrine Tolls the Limitations Period................................................................14

B. Alternatively, Cornwell's Fiduciary Duty Claims are Subject to a Six-Year Statute of Limitations........................................16

IV. DEFENDANTS' M.G.L. C. 93A ARGUMENT IS INCORRECT ..............18

████████████████████████████████████████████
████████████████████████████████████████████ 28

CONCLUSION .................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)......................................................................13

*Barnett v. Countrywide Bank*,
   60 F. Supp. 3d 379 (E.D.N.Y. 2014) ...............................................16

*Bradley v. Dean Witter Realty*,
   967 F. Supp. 19 (D. Mass. 1997) ....................................................19

*Bryan v. United States*,
   524 U.S. 184 (1998)........................................................................2

*Chase Scientific Research Inc. v. NIA Grp., Inc.*,
   749 N.E.2d 161 (N.Y. 2001)...........................................................17

*Chrabasczcz v. Johnston School Comm. et al*,
   No. 03-133S, 2007 U.S. Dist. LEXIS 2846 (D.R.I. Jan. 12, 2007)....................11

*Computer Sys. Eng. v. Qantel Corp.*,
   571 F. Supp. 1365 (D. Mass. 1983), *aff'd* 740 F.2d 59 (1st Cir.
   1984) ..........................................................................................19

████████████████████████████████████

████████████████████████████████████

*Golden Pac. Bancorp v. FDIC*,
   273 F.3d 509 (2d Cir. 2001) ...........................................................15

*IDT Corp. v. Morgan Stanley Dean Witter & Co*,
   907 N.E.2d 268 (N.Y. 2009).......................................................16, 17

*Kaplin v. Buendia*,
   No. 15-649, 2015 U.S. Dist. LEXIS 159019 (S.D.N.Y. Nov. 24,
   2015) ......................................................................................16, 18

███████████████████  ██████████████████████████

*Kelley v. Ricelli Enters. of Mass., Inc.*,
   No. 10-P-1796, 2011 Mass. App. LEXIS 1272 (Mass. App. Ct.
   Oct. 11, 2011) ........................................................................................19

*Kubin v. Miller*,
   801 F. Supp. 1101 (S.D.N.Y. 1992) ...................................................18

*Lynch v. City of Bos.*,
   180 F.3d 1 (1st Cir. 1999)...................................................................10

*Malmsteen v. Berdon*,
   369 F. App'x 248 (2d Cir. 2010) ........................................................17

█████████████  ████████████████████████████████

*Osorio v. One World Techs.*,
   659 F.3d 81 (1st Cir. 2011)..................................................................10

*Perdoni Bros., Inc. v. Concrete Sys., Inc.*,
   35 F.3d 1 (1st Cir. 1995).....................................................................10

*Putnam Res. v. Pateman*,
   958 F.2d 448 (1st Cir. 1992)................................................................19

*Rinaldi v. Holt Rinehart & Winston, Inc.*,
   42 N.Y.2d 369 (N.Y. 1977) .................................................................13

*Ringuette v. City of Fall River*,
   146 F.3d 1 (1st Cir. 1998)....................................................11, 13, 14

*Sears, Roebuck & Co. v. Enco Associates*,
   372 N.E.2d 555 (N.Y. 1977)..........................................................17, 18

████████████████████████  ████████████████████

*State of N.Y. Workers' Comp. Bd. v. Madden*,
   38 Misc. 3d 1229(A) (N.Y. Sup. Ct. 2013) ........................................15

*Matter of Therm, Inc.*,
132 A.D.3d 1137 (N.Y. App. 2015) ...................................................................15

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991) ..........................................................................14

████████████████████

██████████████████████████████████████

*United States v. Danielczyk*,
788 F. Supp. 2d 472 (E.D. Va. 2011), *overruled on other grounds
by* 683 F. 3d 611 (4th Cir. 2012)...............................................................2

*Value Partners S.A. v. Bain & Co.*,
245 F. Supp. 2d 269 (D. Mass. 2003).................................................................19

*Westchester Religious Inst. v. Kamerman*,
691 N.Y.S.2d 502 (N.Y. App. 1999)..................................................................15

*Wikiert v. City of New York*,
128 A.D.3d 128 (N.Y. App. 2015) ..................................................................18

*Williamson v. PricewaterhouseCoopers LLP*,
872 N.E.2d 842 (N.Y. 2007)..........................................................................15

**Statutes**

72 Fed. Reg. 16695, 16696 (Apr. 5, 2007) ............................................................12

2 U.S.C. *§* 441f.................................................................................2

CPLR 214(6) .............................................................................15, 17, 18

M.G.L. c. 93A .............................................................................18, 19

New York Education Law Title VIII .......................................................................12

New York Education Law Title VIII, Article 149, §7401-a....................................................12

**Rules**

████████████████████████████████████████

Rules of N.Y. Bd. of Regents §29.1 ....................................................................12

Rules of N.Y. Bd. of Regents §29.10(c) ..........................................................12

**Other Authorities**

http://www.op.nysed.gov/prof/cpa/palic.htm .........................................................12

████████████████████████████████
██████████████████        ███████████████████████
      █████████████████████████████████████████████████████

U.S.S.G. § 5K2.16............................................................................................12

# INTRODUCTION

Plaintiffs-Appellants Cornwell Entertainment, Inc., Patricia D. Cornwell ("Cornwell") and Staci Gruber, Ph.D. ("Gruber") (collectively, "Plaintiffs") respectfully file this Reply in further support of their appeal from the judgment of the District Court. Plaintiffs respond only to certain arguments advanced by Defendants-Appellees Anchin, Block & Anchin, LLP ("Anchin") and Evan Snapper ("Snapper") (together with Anchin, "Defendants") in their Opposition Brief ("Opp. Br.") and otherwise continue to rely in all respects upon the arguments set forth in their Opening Brief ("Pl. Br.") filed on October 28, 2015.

## I.   DEFENDANTS' FACTUAL ASSERTIONS IGNORE PLAINTIFFS' CONTRARY EVIDENCE.

In an effort to support the lower court's erroneous allowance of Defendants' FRCP 50(b) motion, Defendants present the purported "facts" in their Opposition Brief without regard for Plaintiffs' conflicting evidence, even though the jury clearly relied on the latter in returning its Special Verdicts. This is particularly true and troubling with regard to Plaintiffs' breach of fiduciary duty claim based upon Defendants' false accusation to the Department of Justice ("DOJ") that Cornwell directed a felonious campaign conduit scheme (the "DOJ Investigation").[1]

---

[1]   Another example of reliance upon disputed evidence on a different topic is Defendants' contention that, in January 2006, Plaintiffs "decided to undertake extensive renovations at their Garfield residence" and to "move forward with the long-planned renovations." Opp. Br. 4. In contrast, Plaintiffs' evidence was to the

The following constitute a few clear examples[2] from Defendants' Opposition Brief of this disregard for Plaintiffs' contrary evidence, relating to the same evidence that the District Court disregarded in ruling upon Defendants' FRCP 50(b) motion:

**A.    Defendants Initiated the DOJ Investigation by Falsely Alleging that Cornwell "Directed" the Felonious Conduit Scheme.**

Defendants contend that it was "indisputably true" that Snapper acted "*under Cornwell's direction*" (emphasis added) in carrying out the contribution conduit scheme.  Opp. Br. 21.[3]  But, far from being "indisputably true," Plaintiffs' evidence directly contradicted Defendants' assertion.

---

effect that they made no such decision.  More specifically, Plaintiff Gruber testified that Defendants' consultant, in urging them to buy the Garfield property, assured them that the house would require "no major work for at least five years." JA 6821.  Gruber also testified that Plaintiffs would not have proceeded with the purchase if they had been aware that major renovations would be required in early 2006 because "this is the place where Patricia was also going to be working," and she "absolutely cannot have construction going on in the place where she's working."  JA 6411.

[2]  Plaintiffs refer the Court to their Opening Brief for a complete recitation of the facts supporting the jury's Special Verdicts in favor of Plaintiffs.

[3]  The statute applicable to contribution conduit schemes, 2 U.S.C. § 441f, imposes a heightened *mens rea* standard for criminal culpability.  For Cornwell to have been guilty of the crime alleged by Anchin, she would have to have intended to violate the law, i.e., acted with knowledge that her conduct was unlawful, regardless of whether she was aware of the specific law's commands.  *See United States v. Danielczyk*, 788 F. Supp. 2d 472, 493 (E.D. Va. 2011) (citing *Bryan v. United States*, 524 U.S. 184, 191 (1998)), *overruled on other grounds by* 683 F. 3d 611 (4th Cir. 2012).  This heightened standard bears on the key issue of whether Defendants' allegation that Cornwell directed the crime was made in good faith.

1.    <u>Cornwell Did Not Direct Snapper to Reimburse Himself for the Gilmore Contributions.</u>

With regard to the Gilmore presidential contribution, Defendants state that Cornwell "asked Snapper to make a contribution [to Gilmore's presidential campaign] that she then reimbursed."  Opp. Br. 2.  With regard to the subsequent Gilmore Senate contribution, Defendants contend that Cornwell authorized Snapper to reimburse himself from her funds by suggesting that he "handle this situation (Senate contribution) the same way he handled the presidential one."  JA 11556; 7893-94.  Opp. Br. 3.  Defendants' transcript cites are exclusively to testimony of Snapper and Anchin Managing Partner Frank Schettino.

Cornwell's evidence was very much to the contrary:  Far from agreeing that she directed Snapper to reimburse his contributions to Gilmore from her funds, Cornwell testified that she did not know that he had reimbursed himself for the Gilmore presidential contribution until after this lawsuit was filed.  JA 8149.  She also testified that she asked Snapper to do what *he personally* could to "help Jim in any way [he could]."  JA 8154.  She did so because she knew that Snapper "was supportive of Jim's presidential campaign" and "was very impressed with him."  *Id.*[4]  She further testified that, because of her understanding of Snapper's regard for

---

[4]    Stephen Braga, Cornwell's attorney in the DOJ Investigation, testified that Cornwell provided the same information to the DOJ in 2010.  Tr. Day 8 at 105-06.  He also testified that she personally supported Hillary Clinton in the presidential

Gilmore, she reiterated the message to Snapper, including in Gilmore's later Senate campaign, to "help Jim in any way *you* can.  I turn it over to *you*, whatever *you* can do for him" (emphasis added).  *Id*.

In the context of Defendants' FRCP 50(b) motion, the District Court was required to accept Cornwell's version, i.e., that she asked Snapper to help Gilmore personally, not to help Gilmore with her money.   Hence, Defendants' acknowledged report to the DOJ that Cornwell "directed" the conduit scheme, *see, e.g.*, JA 7253-54, is false.  Defendants' only basis to contend that it was true in a FRCP 50(b) context is to argue that a jury must infer that, any time a client asks her business manager to contribute to a political candidate,  she has directed him to reimburse himself from the client's funds.  The law permits no such inference, and certainly does not compel such an inference.

2. <u>Cornwell Did Not Direct Snapper to Bundle and Reimburse Contributions for the Hillary Clinton Benefit Concert.</u>

In disregard of the standard applicable to a FRCP 50(b) motion, Defendants repeat in their Opposition Brief the story that they told, and that the jury rejected, at trial.  As described below, that story was very much at odds with Plaintiffs' evidence, which the jury was entitled to, and did, accept.

---

race and had decided not to support Gilmore, a personal friend, in the Senate race, when he came out in opposition to gay marriage.  *Id.*

In their Opposition Brief, Defendants repeat their contention that, "[k]nowing she had already contributed the maximum amount, JA 9272, Cornwell asked Snapper to obtain tickets to an Elton John concert for Clinton, arrange for friends and family to buy the tickets, and then reimburse them." Opp. Br. 3. But, as the evidence clearly demonstrated, it was Snapper himself who emailed a copy of the invitation to the Elton John benefit concert to Plaintiffs, stating simply, "Sounds Fun!" ( JA 11598), even though he had emailed Cornwell a month earlier that she had reached her maximum contribution level for Hillary Clinton. JA 9272. It was hardly surprising, then, that, in Gruber's words, she and Cornwell "didn't necessarily have any idea that concert tickets were tied to a campaign contribution. It was a concert." JA 6792.

It was also Snapper who suggested that Cornwell purchase friends and family tickets. JA 8155. Only after Snapper "told [her] it was okay to do so" did Cornwell authorize him to reimburse her brother, his wife and son, and her friends the Colemans and two of their children, *id.*, in addition to purchasing two tickets for Gruber and herself.[5] JA 8194-95. *See also* JA 11669.

Indeed, Cornwell's contemporaneous conduct demonstrated that she had no idea that the tickets constituted contributions: She told Snapper that she wanted to

_____

[5]  Cornwell was not even aware that Snapper was also reimbursing several Anchin employees and their guests. JA 8156-57.

buy 50 top-flight tickets and donate them back to the campaign for resale. She asked him to suggest that the campaign make this gesture known to other prospective donors, so that her actions "might encourage others to do the same and raise a hell of a lot more money." JA 11597. Snapper told her that her plan – which was as naïvely innocent on its face as it was generous – could not be effectuated, not because it was illegal or wrongful, but because the campaign was restricting the number of tickets that any one purchaser could buy. JA 8192-93. *See also* JA 6796.

Contrary to Defendants' contention that "Cornwell knew ... that Snapper was recruiting enough people to get Cornwell designated an event chair," Opp. Br. 3,[6] she testified that she did not know that Snapper was reimbursing anyone other than her brother's and her close friend's families. JA 8156-57. She understood that *Snapper* himself "was going to raise a certain amount of money, which [she] thought was great." JA 8157.[7] But, when asked whether they knew that they were going to be sponsors or chairs, Gruber's answer was "absolutely not." JA 6796.

---

[6] Among the string Record cites included by Defendants with regard to this assertion, only Snapper's testimony, JA 7897-98, supports the stated premise. In contrast, Cornwell made it clear that she knew only about the tickets for her family, the Colemans, and Gruber and herself, a total of nine, which she permitted Snapper and Fasinski to use and give away when she and her group decided not to attend the concert. JA 8194-95. *See also* JA 11669.

[7] In this regard, the circumstances are similar to the Gilmore Senate situation, where Cornwell, the client, thought that Snapper, the service provider, was engaging in conduct intended to please her, not that he was using her money.

3.  That the DOJ Never Charged Cornwell With a Crime Is Not Evidence That Defendants Did Not Accuse Her of Committing a Crime.

Remarkably, Defendants make the argument that, because DOJ never treated Cornwell as a "target" and never charged her with a crime, Defendants must be telling the truth in contending that they did not in fact report to DOJ that she had committed a crime.  Opp. Br. 3-4.  One is tempted to say that the corollary of this dubious premise is that, had Defendants accused Cornwell of a crime, DOJ would automatically have charged her with a crime, a conclusion that certainly should not follow.  In any event, Defendants turn logic on its head in suggesting that the absence of a criminal charge against Cornwell proves the absence of an accusation by Defendants that she directed the commission of a crime.

Indeed, the argument is nonsensical, given that Defendants acknowledge that they reported Cornwell to DOJ as the person who directed Snapper to carry out the contribution conduit scheme.  JA 7253-54.  Defendants' admission also precludes any inference that Defendants were merely reporting themselves, not Cornwell.  To use a chess analogy, Defendants reported Snapper as the hapless pawn, and Cornwell as the dark queen.

In addition, Cornwell's lawyer in the DOJ investigation, Stephen Braga, testified that DOJ informed him that Cornwell was a "subject."  This, Braga explained, meant that her conduct was "being looked at as being within the scope

of the investigation, but the Department of Justice has not yet gotten to the point where it has met the requirements for being a target, which is substantial evidence to believe that the person actually committed a crime and is likely to be a defendant." Tr. Day 8 at 98-99. Cornwell was clearly a subject because of Anchin's report. That she never became a target, i.e., one as to whom there was "substantial evidence to believe that [she] actually committed a crime," *Id.*, is hardly surprising: No such evidence existed because she had not committed a crime.

**B.** **The District Court Did Not Foreshadow at the Pre-Trial Stage Its Post-Trial FRCP 50(b) Motion Ruling Relating to the DOJ Investigation.**

Defendants imply that the lower court effectively forewarned Plaintiffs of the inadvisability of "mak[ing] the DOJ report the centerpiece of their case," by "warning that they were 'playing with fire.'" Opp. Br. 17. Defendants' implication is that the trial judge knew, at a motion hearing three weeks before the trial commenced, that Plaintiffs' breach of fiduciary duty claim would fail because Plaintiffs would purportedly be unable to "show that Anchin made any false statements to DOJ or acted with malice." *Id.* If the Judge were demonstrating such a predisposition before seeing the key exhibits, e.g., the Bryan Cave/DOJ file obtained by Plaintiffs via subpoena during the trial, JA 8345-47 (see Pl. Br. 29),

and before hearing the testimony of a single witness, shame on him.  But, in fact, there is no reason to infer that that was the case.

When the Judge wished to show skepticism about intended evidence, even before the testimony was actually heard, he was fully capable of expressing that skepticism unambiguously.  *See, e.g.*, the Court's comments at the same motion hearing regarding the expected testimony of Plaintiffs' forensic accountant.[8]  He did not do so with regard to the DOJ Investigation.  To the contrary, he expressed his preliminary view that "the subject matter is probably admissible as part of a breach of fiduciary-duty theory" and that "the topic does fit with the theory of breach of fiduciary duty."  JA 6024.  The suggestion that "plaintiffs are playing with fire a little bit here" (*Id*.) appears to be speculation that the jury might consider Cornwell actually responsible for the conduct under investigation.  As it turned out, they did not.

## II. DEFENDANTS' FALSE ACCUSATIONS TO THE DEPARTMENT OF JUSTICE ARE ACTIONABLE.

### A. Defendants Waived Any Affirmative Defense of Qualified Privilege.

Defendants attempt to bury Plaintiffs' waiver argument at the bottom of their response to the DOJ Investigation issues, *see* Opp. Br. 29, notwithstanding that

---

[8]  That expert, Carl Jenkins, subsequently testified; the jury awarded breach of contract and professional negligence damages, and the Court found no deficiency in that evidence or the resulting verdicts.

waiver is a threshold determination that precludes all other efforts to justify the trial court's ruling.  *See Perdoni Bros., Inc. v. Concrete Sys., Inc.*, 35 F.3d 1, 4 (1st Cir. 1995) (arguments not specifically identified in Rule 50(a) motion are waived both for FRCP 50(b) purposes and for appellate review).

As did the lower court in its FRCP 50(b) ruling, Defendants vastly overextend the language and holding of *Osorio v. One World Techs.*, 659 F.3d 81, 88 (1st Cir. 2011).[9]  Pl. Br. 21-22.  Nor should this Court credit Defendants' suggestion that even if the qualified privilege argument was waived, their other arguments regarding breach of fiduciary duty were somehow preserved.  Opp. Br. at 30.  That suggestion amounts to nothing more than a restatement of Defendants' false premise: that every specific argument and affirmative defense is preserved merely by alleging in a FRCP 50(a) motion without further explanation that a particular claim fails as a matter of law.  "Where, as here, the 'renewed' motion presents an entirely distinct legal theory for dismissal, not fairly alluded to in the pre-verdict motion and unrelated to the initial argument (beyond merely asserting

---

[9]  The only other authority cited by Defendants, *Lynch v. City of Bos.*, 180 F.3d 1 (1st Cir. 1999), is no more helpful to their cause.  The *Lynch* defendant was held to have preserved a qualified immunity defense for her Rule 50(b) motion where she had specifically asserted and supported that defense on numerous occasions throughout the litigation, although she had not articulated it with "technical precision" in her FRCP 50(a) motion.  180 F.3d at 13 n.9.  In the latter circumstances, plaintiff was put on notice, even if there was questionable deficiency in the motion.  Here, Defendants brought up the affirmative defense of qualified privilege for the very first time in their FRCP 50(b) motion.

that it, too, defeats plaintiffs' claim), it cannot be allowed under Rule 50(b)."
*Chrabasczcz v. Johnston School Comm. et al*, No. 03-133S, 2007 U.S. Dist. LEXIS
2846, at *19 (D.R.I. Jan. 12, 2007) (allowing defendants to assert an entirely new
theory of privilege "would stretch whatever flexibility Rule 50(b) might have past
its breaking point.").[10]

### B. The Evidence, Properly Viewed in the Light Most Favorable to the Verdict, Does Not Provide the Safe Harbor Defendants Seek.

Defendants argue in support of their effort to avoid fiduciary duty liability
that their report to DOJ that Cornwell directed the commission of a crime was
truthful. That argument stands upon a fatally defective foundation. As discussed
above and in Plaintiff's Opening Brief, Plaintiffs presented contrary evidence, to
wit: that Cornwell did *not* direct the contribution scheme, which the jury
obviously credited. *See* pp. 3-6, *supra*; Pl. Br. 22-32; 35-37. Viewed, as it must
be, in the light most favorable to the verdict (Pl. Br. 16), the Court's conclusion
that the evidence could not support the jury's verdict cannot withstand scrutiny.

---

[10] Plaintiffs did not waive their other arguments regarding Defendants' failure to
assert the qualified privilege defense in their pleadings or at trial. Opp. Br. 30.
Defendants cite *Ringuette v. City of Fall River*, 146 F.3d 1, 4 (1st Cir. 1998) here
and throughout their brief for the proposition that certain arguments not
specifically articulated in Plaintiffs' Rule 50(b) Opposition were waived for
purposes of appeal. *See* Opp. 20, 27, 30, 41. *Ringuette*, however, concerns Rule
50(*a*), not Rule 50(b). 146 F.3d at 4. It simply stands for the uncontroversial
principle that affirmative defenses tried on the merits by consent of the parties
cannot thereafter be held waived. *Id.* No court has cited *Ringuette* in the manner
Defendants suggest.

Accepting the jury's finding that Defendants' report was false, Defendants' remaining arguments fall away.  For example, the New York rule of professional conduct cited by the lower court and by Defendants, Opp. Br. 17, applies to "licensees" under Title VIII of the New York Education Law[11] and "public accounting firms."  Rules of N.Y. Bd. of Regents §29.10(c).  Of course, Anchin handled Cornwell's campaign contributions as business managers, not as accountants.  JA 7402-03.  Snapper, for whose conduct Anchin is liable on *respondeat superior* grounds, is not a CPA and thus is not a licensee at all.  JA 715.  Moreover, a separate provision in the rules of professional conduct, §29.1, expressly prohibits "willfully making or filing a false report," deeming such action "unprofessional conduct."  Section 29.10(c) does not override §29.1.

Defendants' contention that their accusations were "otherwise authorized or required by law" also fails, largely because, as the jury found, the accusations were false.  Defendants' reliance upon 72 Fed. Reg. 16695, 16696 (Apr. 5, 2007) and U.S.S.G. § 5K2.16, Opp. Br. 17-18, which relate to reducing one's own penalties for campaign contribution violations and garnering a lower sentence for voluntary

---

[11]  The only type of accounting license offered under the Education Law is that of a Certified Public Accountant.  Article 149, §7401-a; *see also* http://www.op.nysed.gov/prof/cpa/palic.htm (noting that general "Public Accountant" license – as opposed to CPA – has not been available since 1959).

disclosure of one's own conduct, do not authorize falsely accusing another (much less the client of a fiduciary).[12]

Defendants' contention that Plaintiffs waived their argument that the lower court erred in relying upon defamation cases "because plaintiffs did not raise it in opposition to Anchin's Rule 50(b) motion," is simply wrong. *See* JA 4691 and *id.* n.7. *See also supra*, n. 10 (explaining Defendants' improper reliance on *Ringuette*, 146 F.3d at 4).[13]

Finally, Defendants attempt in a footnote to claim that there has been no finding of malice because the jury's decision to award punitive damages does not equate to such a conclusion. Opp. Br. 24, n.5. Defendants were wise to relegate this argument to a footnote, although they did not adequately preserve it in doing so, because they themselves contradict the point. In attempting to defend their late assertion of privilege, Defendants say their delay "is inconsequential because the relevant issue – *whether Anchin maliciously made false statements to DOJ* – was tried." Opp. Br. 31 (emphasis added). The jury's conclusion that Defendants acted

---

[12]    Plaintiffs' breach of fiduciary claim has never been premised on Defendants' response to a subpoena. Pl. Br. 11, n.8.

[13]    Defendants' citation to constitutional law provisions (Opp. Br. 18-19) is also premised on their faulty claim that the report was truthful. A false report is entitled to no such protection. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986); *Rinaldi v. Holt Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 382 (N.Y. 1977).

with actual malice was established at trial and is supported by the evidence. *See* Pl's Br. 35-36.

### C. Defendants Should Not Have Been Permitted Simultaneously to Rely on an Advice of Counsel Defense and Assert Attorney-Client Privilege.

Plaintiffs did not waive their advice-of-counsel arguments. Counsel preserved Plaintiffs' objections to improper assertions of the attorney-client privilege throughout trial. *See, e.g.*, JA 7272; 7292; 7348; 7391-92. Plaintiffs had no reason to reiterate those objections until the Court made the *sua sponte* factual finding in its Rule 50(b) Order, from which Plaintiffs now appeal, that Defendants "on advice of counsel" self-reported to DOJ. JA 4785; *see also supra* n. 10 (explaining why Defendants' reliance on *Ringuette*, 146 F.3d at 4, is misplaced). *See also United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) (privilege waived on cross-examination where defendant referenced advice of counsel in context of demonstrating good faith).

## III. THE LOWER COURT'S NUMEROUS PRE-FRCP 50(B) RULINGS REGARDING THE STATUTE OF LIMITATIONS WERE CORRECT.

### A. The Continuous Representation Doctrine Tolls the Limitations Period.

Even where courts apply the "specific matter" sub-doctrine, which is by no means always the case,[14] the parties' "mutual understanding" is controlling. *See Williamson v. PricewaterhouseCoopers LLP*, 872 N.E.2d 842, 847-48 (N.Y. 2007) (distinguishing between "annual engagements with defendant for the provision of separate and discrete audit services … [necessitating no further work] and "a course of representation as to the particular problems (conditions) that gave rise to plaintiff's [] claims …. [such as] engag[ing] defendant to provide corrective or remedial services"). Anchin's broad engagement was continuous. Pl. Br. 43-46.

Finally, Defendants argue in a footnote that the continuous representation doctrine only tolls fiduciary duty claims against "professionals" who fall within the limited scope of CPLR 214(6). Opp. Br. 40 n.12. That is simply untrue. Courts routinely apply the doctrine to fiduciaries who are not licensed professionals. *See, e.g., Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 518-19 (2d Cir. 2001) (applying doctrine to toll fiduciary duty claims involving receivership); *Westchester*

---

[14] Courts frequently recite and apply the continuous representation doctrine without any requirement that the claim concerns a particular transaction. *See, e.g., Matter of Therm, Inc.*, 132 A.D.3d 1137, 1138 (N.Y. App. 2015) (noting and applying rule that "the statute of limitations for a claim alleging a breach of fiduciary duty is tolled until there has been an open repudiation by the fiduciary or the relationship has otherwise been clearly terminated"); *State of N.Y. Workers' Comp. Bd. v. Madden*, 38 Misc. 3d 1229(A) (N.Y. Sup. Ct. 2013) (applying continuous representation doctrine without reference to specific matter requirement).

*Religious Inst. v. Kamerman*, 691 N.Y.S.2d 502, 503 (N.Y. App. 1999) (corporate officers).

    **B.**    **Alternatively, Cornwell's Fiduciary Duty Claims are Subject to a Six-Year Statute of Limitations.**

    Defendants persist in contending that *IDT Corp. v. Morgan Stanley Dean Witter & Co*, 907 N.E.2d. 268 (N.Y. 2009) constitutes a "crystal clear" rejection of the six-year statute of limitations for fiduciary duty claims sounding in contract. [15] Opp. Br. 33.  Several New York federal courts applying New York law, including the Court of Appeals for the Second Circuit, disagree, holding that a six-year statute of limitations applies to a fiduciary duty claim where the asserted liability has its genesis in the parties' contractual relationship.  Pl. Br. 46-48.  The most recent pronouncement was slightly more than two months ago.  *Kaplin v. Buendia*, No. 15-649, 2015 U.S. Dist. LEXIS 159019, at *6-7 (S.D.N.Y. Nov. 24, 2015) (acknowledging *IDT* but holding that six year period also applies where liability had its genesis in parties' contractual relationship).  *See also Barnett v. Countrywide Bank*, 60 F. Supp. 3d 379, 391 (E.D.N.Y. 2014), and cases cited at Pl. Br. 48.

---

[15]  The fiduciary duty claim in *IDT* did not, as Defendants contend, arise from the parties' contractual relationship.  Opp. Br. 34.  Plaintiff IDT was not a client of defendant Morgan Stanley at the time of the alleged breach, which occurred two years after the parties' engagement.  *See* 907 N.E.2d at 137.

Defendants' remaining argument, i.e., that Plaintiffs' negligence-based fiduciary duty claims were subject to CPLR 214(6), was briefed below and apparently rejected when the court grounded its statute of limitations ruling solely on the basis of *IDT* and the continuous representation doctrine.[16]   JA 4785-86. CPLR 214(6) does not extend to fiduciary duty claims that concern the provision of business management services, even in those circumstances where the business managers are also accountants.[17]  *Malmsteen v. Berdon*, 369 F. App'x 248, 249-51 (2d Cir. 2010) (breach of fiduciary duty claim against plaintiff's breach of business manager/accountant not a malpractice claim subject to CPLR 214(6) where the brief was a function of business management).  *See also Chase Scientific Research Inc. v. NIA Grp., Inc.*, 749 N.E.2d 161, 166 (N.Y. 2001) (CPLR 214(6) applicable only to a "discrete group" of professions subject to licensure requirements).

Contrary to Defendants' position, *see* Opp. Br. 35-36, *Sears, Roebuck & Co. v. Enco Associates*, 372 N.E.2d 555, 558 (N.Y. 1977), supports, rather than forecloses, Plaintiffs' breach of fiduciary duty claim because the latter does not sound in malpractice subject to CPLR 214(6).  The *Sears* rule continues to govern

---

[16]  Hence, Plaintiffs did not "waive" their arguments with respect to CPLR 214(6). Opp. Br. 38.  Because the Court's adverse ruling implicitly rejected Defendants' position, there was no reason for Plaintiffs to challenge the issue on appeal.

[17]  CPLR 214(6) provides that a three-year limitations period applies to "an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort[.]"

in determining the statute of limitations for claims that are not subject to CPLR 214(6), including claims for breach of fiduciary duty. *See Wikiert v. City of New York*, 128 A.D.3d 128, 137 (N.Y. App. 2015) ("[W]ith respect to actions other than those sounding in malpractice which involve claims for property damage, *Sears* remains instructive.). *See also, e.g., Kaplin*, 2015 U.S. Dist. LEXIS at *6-7 (applying *Sears* rule to fiduciary duty claim).

Nor does *Sears* preclude application of the six-year statute of limitations based on the relief sought by Plaintiffs, as Defendants now contend. Opp. Br. 36.[18] While *Sears* held that only contract damages would be available to a malpractice plaintiff availing itself of the six-year limitations period for an action sounding in contract, 372 N.E.2d at 560, "New York law recognizes breach of fiduciary duty as an exception to the general rule that punitive damages are not recoverable for breach of contract claims." *Kubin v. Miller*, 801 F. Supp. 1101, 1122 (S.D.N.Y. 1992). *See also Kaplin*, 2015 U.S. Dist. LEXIS, at *9 (quoting *Kubin* and denying motion to dismiss request for punitive damages, where plaintiff's fiduciary duty claim was subject to six-year statute of limitations under *Sears* rule).

## IV.   DEFENDANTS' M.G.L. C. 93A ARGUMENT IS INCORRECT.

Defendants incorrectly argue that Plaintiffs cite to "no case applying a choice-of-law analysis (as opposed to a contractual choice-of-law clause) and

---

[18] Contrary to Defendants' assertion, Plaintiffs did not seek "lost profits" at trial. Opp. Br. 36.

concluding that the same acts and omissions were governed by Chapter 93A and the common law of another jurisdiction." Opp. Br. 47-48. The court in *Kelley v. Ricelli Enters. of Mass., Inc.*, No. 10-P-1796, 2011 Mass. App. LEXIS 1272 (Mass. App. Ct. Oct. 11, 2011) (reporting 2011 Mass. App. Unpub. LEXIS 1078) (Rule 1:28 decision), Pl. Br. at 60, applied a choice-of-law analysis and concluded that the same acts and omissions were governed by Chapter 93A and the common law of another jurisdiction. The *Kelley* court rejected defendants' argument that a contractual choice-of-law clause providing for New York law barred a Chapter 93A claim. It then reached a holding based upon a traditional choice-of-law analysis, to wit, "…the relationship of the parties and of the unfair or deceptive act to Massachusetts necessitated the application of Massachusetts law, specifically c. 93A." *Id. See also Computer Sys. Eng. v. Qantel Corp.*, 571 F. Supp. 1365, 1370-71 (D. Mass. 1983), *aff'd* 740 F.2d 59 (1st Cir. 1984) (applying 93A notwithstanding contract claims tried under California law); *Bradley v. Dean Witter Realty*, 967 F. Supp. 19, 27 (D. Mass. 1997) (applying 93A notwithstanding contract claims under New York law).

In addition, the general principle that "a plaintiff may bring claims under Massachusetts law even where other claims in the same case are governed by the law of a different jurisdiction" – like the related doctrine of dépeçage – is indifferent to the nature of those claims. *Value Partners S.A. v. Bain & Co.*, 245 F.

Supp. 2d 269, 274 (D. Mass. 2003); *Putnam Res. v. Pateman*, 958 F.2d 448, 465 (1st Cir. 1992).   Thus, the concurrent application of Massachusetts consumer protection law with New York common law is permissible whether the latter sounds in contract or in tort.  (Plaintiffs' common law claims sounded in both.)

As Plaintiffs argue in their Opening Brief at 59-61, the choice-of-law analysis requires the application of the law of the venue where the consumer suffered her injuries, i.e., Massachusetts.   Hence, Plaintiffs are entitled to the protection of Chapter 93A.











## CONCLUSION

For the foregoing reasons, Plaintiffs seek reinstatement of the jury verdict and a remand as set forth herein and in Plaintiffs-Appellants' Opening Brief.

Respectfully submitted,

/s/ *Joan A. Lukey*
Joan A. Lukey (1st Cir. Bar No. 14225)
Justin J. Wolosz (1st Cir. Bar No. 70575)
Kevin C. Quigley (1st Cir. Bar No. 1172676)
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel: (617) 248-5000
Fax: (617) 248-4000

Dated: February 3, 2016

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I, Joan A. Lukey, certify as follows:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because this brief contains 6,824 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Time New Roman in 14 point.

/s/ *Joan A. Lukey*
Joan A. Lukey

# CERTIFICATE OF SERVICE

I certify that, on February 3, 2016, I caused the foregoing document, Reply

Brief Of Plaintiffs-Appellants, to be filed by hand with the United States Court of

Appeals for the First Circuit.  I further certify that I caused a copy of said

document to be served by hand and/or United Parcel Service upon the following

counsel of record for the Defendants-Appellees:

Jack W. Pirozzolo
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109

Thomas R. Manisero
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
1133 Westchester Ave
White Plains, NY 10604

Carter G. Phillips
Eric D. McArthur
Jennifer J. Clark
SIDLEY AUSTIN, LLP
1501 K St. N.W.
Washington, D.C. 20005


/s/ *Joan A. Lukey*
Joan A. Lukey